# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>　　　　　　Respondent,<br><br>v.<br><br>TERRY DUANE TEAL,<br><br>　　　　　　Appellant. | No.  60082-0-II<br><br><br>UNPUBLISHED OPINION |

PRICE, A.C.J. — Terry D. Teal appeals his convictions for one count of first degree rape of a child and three counts of third degree rape of a child.  He argues that he was deprived of the right to a fair trial because the trial court permitted two biased jurors to serve on the jury panel.  We disagree and affirm Teal's convictions.

## FACTS

I. BACKGROUND

In May 2023, C.J.J.[1] accused Teal and C.J.J.'s mother, Brandy Jennings, of sexually abusing them from the ages of 9 to 15.  Following an investigation, the State charged Teal with one count of first degree rape of a child and three counts of third degree rape of a child.  The case proceeded to a jury trial.

---

[1] C.J.J. was previously named L.J.J., but we follow their preference to be identified as C.J.J.

II. JURY SELECTION

Jury selection began with each prospective juror completing a written questionnaire. Following review of these questionnaires, the trial court and the parties conducted individual questioning of some of the prospective jurors outside the presence of the entire jury pool. Prospective jurors 11 and 32 were among those individually questioned.

A. JUROR 11

Juror 11 wrote on her questionnaire that she had personal experience involving the sexual abuse of children. She said that she had been a victim as a child, and she also said that her brother had been accused of sexually abusing another person. She wrote that she could "maybe" be fair and impartial in a sexual abuse case involving a child. 2 Verbatim Rep. of Proc. (VRP) at 105.

The State first asked juror 11 if her experience as a victim of sexual abuse would affect her ability to decide the case "based solely on the evidence presented." 2 VRP at 103. Juror 11 responded that because the abuse had "been so long ago," she did not think her experiences would affect this ability. 2 VRP at 103.

The State next asked juror 11 about her feelings regarding the accusations made against her brother. Juror 11 explained that there was some information that made it unclear if the accuser's allegations were false. When the State later asked if this experience would affect her ability to be impartial, she responded, "I think so." 2 VRP at 104.

The State also asked juror 11 about her response on her questionnaire where she said that she would "maybe" be fair and impartial in a case like this. Juror 11 responded that although as a mother she would "always lean towards the kids," that she still thought she would be able to view the evidence presented at trial objectively "on the evidence that [she] receive[d]." 2 VRP at 105.

2

After the State's questions, Teal did not ask juror 11 any follow-up questions or move to have her excused for cause.

B. JUROR 32

Juror 32 stated on her questionnaire that because she was the parent of two children, sitting on a case about child abuse would be "very emotional" and she could "maybe" be fair and impartial to both sides. 2 VRP at 156.

Teal asked juror 32 if she would be able to put aside her personal feelings if the trial court instructed her to, and she responded, "I would do my best to put emotion aside, but it's an emotional topic." 2 VRP at 157. Juror 32 went on to explain that she tended to be a "more emotional person." 2 VRP at 157.

Teal explained to juror 32 that if she were to serve on the jury, she would be hearing testimony from the alleged victim and would have to decide whether the victim's allegations were true. Given this role, Teal asked if juror 32 would be able to be unbiased and not favor the testimony of the alleged victim over the other evidence. Juror 32 responded that she would "very much try" to remain fair, but she was "not [a] hundred percent confident" she could remain unbiased. 2 VRP at 158.

Teal moved to have juror 32 excused for cause. Teal argued that although juror 32 seemed "nice" and "very sincere," he wanted her excused because she had said that she's not a "hundred percent sure if she could be unbiased." 2 VRP at 158.

The State responded that despite juror 32's uncertainty, the juror also said that she would do her best to follow the trial court's instruction to evaluate the evidence fairly. The State also

pointed out that juror 32 did not have a specific reason that would make it difficult for her to remain unbiased other than that she was a parent.

The trial court agreed with the State and denied Teal's challenge. After taking a moment to re-review juror 32's written questionnaire, the trial court said,

> [A]lthough it's a close question, it does appear to me the juror is not one that I would excuse, given her written responses and her responses here. Simply because she doesn't express 100 percent certainty. I don't require that of any juror. So I'll deny the challenge.

2 VRP at 159.

## C. THE PARTIES EXERCISE CHALLENGES

At the conclusion of the individual questioning of the select group of prospective jurors, the trial court excused multiple jurors for cause, including numbers 13, 15, 16, 19, 20, 21, 29, 33, 35, 37, 41, and 48. The trial court denied only two of Teal's motions for cause, one for juror 24, and one for juror 32. Juror 11 was not among the jurors challenged by Teal. After those prospective jurors were excused, the parties and the trial court then began group questioning of the entire remaining pool of prospective jurors.

Following the group questioning, the parties exercised their peremptory challenges. Juror 11, being a low number and having not been previously excused for cause, remained within the first 12 prospective jurors and, thereby, preliminarily included on the jury panel. Teal did not exercise a peremptory challenge for juror 11, and she was left on the jury for trial.

As the process for exercising peremptory challenges was winding down, Teal had one challenge remaining. At that point, juror 32 remained outside of the range of jurors on the preliminary jury panel, but she was next up to be inserted onto the jury if any further jurors were

excused. Teal then exercised his last peremptory challenge to remove juror 3 (notwithstanding that Teal had not previously made any for-cause challenge against juror 3). With Teal's removal of juror 3, juror 32 was inserted onto the final jury panel, and she served on the jury for trial.

Following trial, the jury convicted Teal of all four charges.

Teal appeals.

## ANALYSIS

Teal argues that the trial court deprived him of the right to a fair trial when it allowed jurors 11 and 32 to serve on the jury because they exhibited "unresolved bias." Br. of Appellant at 14. We disagree because Teal waived his argument.

I. LEGAL PRINCIPLES

"The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution both guarantee a criminal defendant the right to trial by an impartial jury." *State v. Guevara Diaz*, 11 Wn. App. 2d 843, 854-55, 456 P.3d 869, *review denied*, 195 Wn.2d 1025 (2020).

A party may challenge a prospective juror for cause if the party can show actual bias. RCW 4.44.170(2). "Actual bias" occurs if a juror "cannot try the issue impartially and without prejudice to the substantial rights of the [defendant] . . . ." RCW 4.44.170(2). But the fact that a juror expresses or forms an opinion is insufficient to sustain a challenge. RCW 4.44.190. Instead, "the court must be satisfied, from all the circumstances, that the juror cannot disregard such opinion and try the issue impartially." *Id.* In addition to challenging a particular juror for cause, each party is later permitted to use a certain number of peremptory challenges to excuse a particular juror without providing a reason. *State v. Lupastean*, 200 Wn.2d 26, 36, 513 P.3d 781 (2022).

5

A defendant's use of these challenges can implicate whether they waive their right to challenge the inclusion of a specific juror on appeal. *See, e.g.*, *State v. Talbott*, 200 Wn.2d 731, 747-48, 521 P.3d 948 (2022). Our Supreme Court has held that if the trial court denies a party's for-cause challenge and the challenging party does not use their peremptory challenges to remove that juror, they waive the right to raise the trial court's denial of the for-cause challenge on appeal. *Id.* In *Talbott*, the trial court denied the defendant's attempt to excuse one of the jurors, juror 40, for cause. *Id.* at 736. Then, when it came to peremptory challenges, the defendant "affirmatively 'accept[ed] the panel' " without using a peremptory challenge to remove juror 40, even though they had at least two challenges available. *Id.* (alteration in original) (quoting record). Our Supreme Court explained that this failure to exhaust their peremptory challenges was preclusive of appellate review, because

> [d]oing so promotes a defendant's right to receive a fair trial in the first instance and prevents unnecessary retrials. This helps to ensure that peremptory challenges are used to "promote, rather than inhibit, the exercise of fundamental constitutional rights."

*Id.* at 746 (internal citation omitted) (quoting *Lupastean*, 200 Wn.2d at 52). To do otherwise has the potential to "improperly discourage counsel from curing potential jury-selection errors with peremptory challenges in order to obtain reversal on appeal." *Id.* at 746-47.

Following *Talbott*, the Court of Appeals has consistently applied this rule and added clarifications along the way. For example, in *State v. Kovalenko*, Division One clarified that to appeal the trial court's denial of a for-cause challenge, a party must not only have exhausted all of their peremptory challenges, but they must also have used one of those peremptory challenges to remove the juror at issue. 30 Wn. App. 2d 729, 737-38, 546 P.3d 514, *review denied*, 3 Wn.3d

1036 (2024). There, a defendant attempted to remove juror 9 for cause, but the trial court denied the defendant's challenge. Thereafter, the defendant exhausted all six of his peremptory challenges, however they chose not to use any of them to remove juror 9, and that juror remained on the panel. *Id.* at 738. Division One explained that because the defendant "did not exhaust his peremptory challenges before he had a chance to strike juror 9," he waived his ability to have the for-cause challenge considered on appeal. *Id.* And, like in *Talbott*, allowing a party to appeal the trial court's for-cause challenge even when the party elected to use their peremptory challenges on other jurors would permit some level of gamesmanship and improper use of peremptory challenges. *Id.*

In *In re Personal Restraint of Perry*, this court rejected, using waiver, another attempt by a defendant to appeal the inclusion of an allegedly biased juror (juror 8) even though defense counsel made no challenges, neither for cause nor peremptory, against that juror. 29 Wn. App. 2d 734, 741, 750, 542 P.3d 168 (2024). Still, relying on *State v. Irby*,[2] which stated that " '[t]he presence of a biased juror cannot be harmless; the error requires a new trial without a showing of prejudice,' " Perry argued that they should be able to raise a juror bias argument. *Id.* (alteration in original) (internal quotation marks omitted) (quoting *State v. Irby*, 187 Wn. App. 183, 193, 347 P.3d 1103 (2015), *review denied*, 184 Wn.2d 1036 (2016)). This court held that under *Talbott*, the defendant's claim was still waived, notwithstanding the broad language in *Irby*; the court reasoned,

> *Irby*'s application here is unpersuasive because it is readily distinguishable on its facts. There, the defendant had waived both his right to be represented at trial and his right to be present. Thus, the jury was selected without any participation by the

---

[2] 187 Wn. App. 183, 193, 347 P.3d 1103 (2015), *review denied*, 184 Wn.2d 1036 (2016).

defendant or counsel, placing a greater burden on the trial court during jury selection. Because there was no defendant (or counsel) present who could have exercised a peremptory challenge, *Irby* provides no guidance on whether *Talbott* applies to this case.

*Perry*, 29 Wn. App. 2d at 750 (citations omitted).

## II. APPLICATION

Teal argues that jurors 11 and 32 should not have served on the jury panel in this case because they "expressed bias and never unequivocally stated they would be fair and impartial." Br. of Appellant at 19. Teal contends that after the jurors expressed bias when they learned that the case involved child sex abuse, the trial court never obtained adequate "assurance that they would both be impartial." Br. of Appellant at 20.

Teal does not address whether his failure to use his peremptory challenges is preclusive of this appeal. Instead, he contends, relying on the language in *Irby*, that because jurors 11 and 32 exhibited such bias, allowing them to serve on the jury was a manifest constitutional error that could be raised for the first time on appeal.

The State responds that Teal waived his claims because he failed to use any of his peremptory challenges to ensure that jurors 11 or 32 were excluded from the jury. We agree with the State.

Like the *Perry* court, we are unpersuaded of *Irby*'s applicability given its factual differences. 29 Wn. App. 2d at 750. Further, Teal makes no attempts to distinguish this case from *Perry*, *Kovalenko*, or *Talbott* or argue why the broad language in *Irby*, rather than *Talbott*, should apply. Thus, we proceed to analyze whether Teal waived his claim under *Talbott* and the subsequent court of appeals cases that followed.

Starting with juror 11, under *Talbott* and its progeny, Teal's claim of juror bias is clearly waived. Although he had ample opportunity, Teal did not raise either a for-cause challenge or use any of his peremptory challenges to remove juror 11 from the jury panel. Thus, he cannot challenge juror 11's appointment for the first time on appeal. *See Perry*, 29 Wn. App. 2d at 750.

Teal's waiver of his claim regarding juror 32 is, perhaps, less obvious; but his claim is no less waived. The only reason that juror 32 was on the jury was because Teal exercised his last peremptory challenge on juror 3. Anticipating that juror 32 would have been juror 3's replacement, Teal could have decided to keep juror 3 on the panel (especially because Teal never brought a for-cause challenge against juror 3), or he could have decided to ask the trial court for additional peremptory challenges. Teal did neither.

It is true that juror 32's presence on the jury was not due to Teal's failure to use a peremptory challenge *on the juror*, but the juror's presence was still a direct result of Teal's decision to use his peremptory challenge on juror 3. We see no meaningful distinction between the two situations—Teal still made a deliberate decision with his peremptory challenge that led to juror 32 being on the jury panel. Thus, Teal's claim of juror bias related to juror 32 is also waived. To hold otherwise, would be to fail to follow *Talbott*'s instruction to "discourage counsel from curing potential jury-selection errors with peremptory challenges in order to obtain reversal on appeal." 200 Wn.2d at 746-47.

## CONCLUSION

Teal's failure to use his available peremptory challenges to prevent both jurors 11 and 32 from serving on his jury waives his challenges to them on appeal. Finding, no reviewable errors on appeal, we affirm.

No. 60082-0-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Price, J.

PRICE, A.C.J.

We concur:

MAXA, J.

CHE, J.